IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>AT&T INC., et al.,<br><br>*Defendants*. | Case No. 1:11-cv-01560 (ESH) |

### DECLARATION OF STEVEN F. BENZ IN SUPPORT OF AT&T'S MOTION TO COMPEL AND AT&T'S OPPOSITION TO SPRINT'S MOTION TO QUASH SUBPOENA

Pursuant to 28 U.S.C. § 1746, I, Steven F. Benz, declare as follows:

1. I am an attorney with the law firm of Kellogg, Huber, Hansen, Todd, Evans & Figel, P.L.L.C., counsel for AT&T Inc., which is a defendant in the matter of *United States v. AT&T Inc., et al.*, Case No. 1:11-cv-01560 (ESH). I have personal knowledge of the matters set forth herein. I make this declaration in support of AT&T's motion to compel and its opposition to Sprint's motion to quash the subpoena that AT&T served.

2. Pursuant to the Special Master's email of October 26, 2011, on October 27, I along with co-counsel for AT&T met and conferred further with counsel for Sprint regarding AT&T's subpoena that was served on Sprint on September 26, 2011.

3. During the meet and confer, we discussed each request of the subpoena. In the interest of compromise and timely getting the documents that AT&T most needs to defend the government's lawsuit, we indicated that, with respect to many requests, we would be willing to

accept Sprint's production to DOJ as fully responsive if Sprint would update that production to the present.

4. In other cases, we explained what we are looking for that was not included in Sprint's production to DOJ and why we believe that we need it. We explained that we were willing to focus our requests and that, in some instances when a request called for "all documents," we would be willing to accept reasonably representative documents.

5. At the end of the meet and confer, we outlined those requests that we considered to be priorities for an updated production. We also indicated that we would be open to discussing whether AT&T would be willing to accept an updated production as to those requests alone.

6. Counsel for Sprint agreed to consider our proposals but indicated that it is Sprint's belief that AT&T already has more than it would normally be entitled to from a non-party by virtue of Sprint's DOJ production.

7. On October 28, 2011, counsel for Sprint informed us that Sprint is not willing to produce anything more in response to AT&T's subpoena, notwithstanding AT&T's narrowed requests. Counsel also informed us that they would be filing a motion to quash AT&T's subpoena later that day and would argue that complying even with AT&T's request to update Sprint's production would be unduly burdensome.

8. Sprint attempts to support its burden argument in part by relying on the size of its production to DOJ as a predictor of the size of what its updated production to AT&T would be.

9. AT&T's e-discovery vendor provided AT&T with an analysis of the composition of the production Sprint made to DOJ in response to DOJ's CID and subsequent modification letters. That analysis provides additional information about the "more than 2.2 million pages" of

Sprint material referenced in Tara Reinhart's October 28, 2011 declaration in support of Sprint's motion to quash.

10.     Of the more than 2.2 million pages of Sprint material that DOJ produced to AT&T on September 27, 2011, only 792,029 pages constitute copies of ordinary business documents, such as Microsoft Outlook emails, Microsoft Word documents, Microsoft Excel workbooks, and Microsoft PowerPoint presentations. These 792,029 pages account for only 141,098 documents. The remaining production – approximately 1.4 million pages – constitutes raw data extracted from databases.

11.     Of the 792,029 pages of Sprint business documents that DOJ produced on September 27, a mere 700 documents account for more than 100,000 pages. Another approximately 21,000 pages are attributable to approximately 7,500 Excel workbooks.

12.     Further, an initial review of Sprint's business documents indicates that Sprint's production protocol to DOJ was to produce two copies of each responsive PowerPoint presentation – a version showing speaker notes and a version not showing speaker notes. More than 356,000 pages of DOJ's September 27 production of Sprint material represent PowerPoint presentations. Assuming Sprint in fact produced two copies of every responsive PowerPoint presentation, more than 178,000 pages represent mere duplicates, and thus present no additional review burden.

13.     Attached hereto as Exhibit 1 is a true and correct copy of "Sprint Statement on Launch Day Sales of iPhone 4S and iPhone 4," a press release issued by Sprint dated October 14, 2011.

14.     Attached hereto as Exhibit 2 is a true and correct copy of "Sprint Nextel Reports Third Quarter 2011 Results," a press release issued by Sprint dated October 26, 2011.

15. Attached hereto as Exhibit 3 are true and correct copies of two articles from FierceWireless: "Clearwire Back in Sprint's Good Graces," dated October 27, 2011; and "Sprint Close to Extending Clearwire Wholesale Deal," dated October 28, 2011.

16. Attached hereto as Exhibit 4 is a true and correct copy of a letter dated May 11, 2011, from counsel for the Department of Justice, Claude F. Scott, Jr., to counsel for Sprint, Steven S. Sunshine, which identifies certain portions of DOJ's requests to Sprint in its CID as "priorities."

17. Attached hereto as Exhibit 5 is a true and correct copy of a letter dated May 19, 2011, from counsel for the Department of Justice, Kathleen S. O'Neill, to counsel for Sprint, Tara S. Emory, which requests data from four types of databases that: (1) track performance metrics, capacity, or financial metrics; (2) track current and future cell site data; (3) track customer survey data; and (4) serve as the source of record for subscriber, billing, and product information.

18. Attached hereto as Exhibit 6 is a true and correct copy of a letter dated June 2, 2011, from counsel for the Department of Justice, Kathleen S. O'Neill, to counsel for Sprint, Tara S. Emory, which defers any production from Sprint aside from the priorities identified in the May 11, 2011 letter and the databases described in the May 19, 2011 letter.

EXECUTED on October 31, 2011.

_____
Steven F. Benz