# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, et al., | |
| *Plaintiffs*, | |
| v. | Case No. 1:11-cv-01560 (ESH) |
| AT&T INC., et al., | |
| *Defendants*. | |

## MEMORANDUM IN SUPPORT OF DEFENDANTS'
## PROPOSED ORDER GOVERNING TRIAL WITNESSES

Defendants respectfully request that the Court enter Defendants' Proposed Order Governing Trial Witnesses.  The parties have met and conferred and were unable to reach agreement.  Two basic issues need to be resolved by the Court.

*First*, Plaintiffs seek to impose a limit, prior even to discovery, on the number of fact witnesses each side may call at trial.  At this point, however, without any indication of how Plaintiffs intend to prove their case, Defendants cannot properly be required to commit to a specific number of trial witnesses.  Defendants, accordingly, ask the Court, as it has done in previous cases, to give each side a certain number of hours to present its case at trial, including direct examination, cross-examination, and rebuttal, but exclusive of attorney argument.  Such an arrangement ensures that equal trial time is available to each side, whether one side has few witnesses who spend a long time on the stand or many witnesses each of whom is on the stand for a shorter period.

*Second*, Plaintiffs seek to turn to their tactical advantage this Court's direction that the parties provide pre-filed direct testimony.  Specifically, they have made clear that they expect to call live witnesses (on grounds that they are not in Plaintiffs' control) but limit Defendants to

pre-filed written directs for the witnesses they call.  To make matters worse, Plaintiffs expect to

call, in their case, witnesses who Defendants also may call.  For these witnesses, Plaintiffs

demand both pre-filed written directs from Defendants (for use in cross-examination when

Plaintiffs call the witnesses first) and scope limitations on Defendants' live examinations, such

that Plaintiffs can cherry-pick in their own live examinations and limit Defendants to only those

narrow subjects when the time comes for live "cross" examination by Defendants.  The

unfairness of that is patent.

Defendants' proposal, by contrast, would require pre-filed direct testimony for all fact

witnesses, except for adverse party witnesses.  Adverse party witnesses would be examined live

as provided by Federal Rule of Evidence 611(c) and would then be examined by the opposing

party without "scope" limitations and without submission of pre-filed written testimony, so that

witnesses need appear at trial on only one occasion and could provide live testimony, on a level

playing field, for both sides.

1.      The Court's initial scheduling order directed that "[p]reliminary witness lists" be

exchanged "at the earliest possible time."  9/23/11 Order at 7.  Under Defendants' proposal,

Plaintiffs, which have the burden of proof, would provide their preliminary list of fact witnesses

on November 15, and Defendants would respond with their list three weeks later, on December

6.[*]  This will ensure that each side has adequate time to depose the other side's witnesses before

the January 10 discovery cut-off.  On January 12, each side will provide a revised witness list

and can both subtract witnesses and add up to five new witnesses to their lists.  Any added

witnesses will be subject to discovery and deposition.  If either side elects not to call a witness on

its January 12 list, the other side may elect to do so.

---

[*] Expert witness disclosures are already separately established in the Court's order.

Plaintiffs' proposal to limit each side to 20 fact witnesses at trial is both premature and misguided.  It is premature because, until Defendants see Plaintiffs' list of potential witnesses (along with "a brief description of the subjects about which each potential witness is expected to testify," Defs.' Proposed Order ¶ 1), Defendants do not know how many (or which) witnesses they will need to counter Plaintiffs' case.  Plaintiffs' proposal is misguided because a better, more equitable approach to ensure a manageable trial is to give each side a certain number of hours to present its case, including direct examination, cross-examination, and rebuttal, but exclusive of attorney argument.  *See*, *e.g.*, Order ¶ 7, *McReynolds v. Sodexho Marriott Servs., Inc.*, Civil Action No. 01-0510 (ESH) (D.D.C. Mar. 4, 2005) ("Each side will have eighty-five (85) hours for their case (excluding openings, closings, voir dire, and instructions).  This will include direct examination, cross-examination, and rebuttal.").  Other cases in this Court have followed the same approach.  *See*, *e.g.*, *United States v. First Data*, 287 F. Supp. 2d 69, 70 (D.D.C. 2003) (Collyer, J.) (establishing overall time limit "to be conducted with chess clocks and divided between Plaintiffs and Defendants").  The Manual on Complex Litigation (4th ed. 2004) ("MCL") suggests several limitations in the event of a risk that "trial will be excessively long," MCL § 11.644, at 127, including "limiting the total time allowed to each side for all direct and cross-examination," *id.*

The government's estimates of total time in this case have ranged from 4 weeks to 6 weeks.  A 4-week trial would allow approximately 70 hours per side.  A 6-week trial would allow approximately 105 hours per side.  Either limit, or somewhere in between, would be fine with Defendants.  The critical point is that a chess clock, rather than arbitrary limits on the number of witnesses, is a better way to control overall trial time, while allowing each side to present its case and to plan its witnesses as it believes best within the limits set by the Court.

Plaintiffs will undoubtedly object that the absence of limits will encourage over-designation of witnesses.  But each side would have a good-faith obligation to list those witnesses, and only those witnesses, that it believes it will call at trial.  More importantly, it will be impossible to settle on a more final list until after depositions have been taken.  Defendants have no objection to "final trial witness lists" being submitted shortly before trial.  Defendants also favor procedures for advance notice of the order in which witnesses will appear at trial.  But Defendants object to any effort to limit their choice of witnesses before they have even taken discovery, when a chess clock approach will better and more fairly ensure that each side presents its case efficiently and compactly.

2.      The Court made clear at its initial scheduling conference that it wanted pre-filed direct testimony for all witnesses.  *See* 9/21/11 Tr. 7.  Plaintiffs seek to avoid that rule for their own witnesses except for "witnesses from whom they reasonably can obtain written testimony." DOJ Proposed Order ¶ 3.  That deliberately vague phrase is not further explained in Plaintiffs' proposed order, but based on statements made by Plaintiffs could potentially embrace all the factual witnesses that the government presents.  Counsel for the Department of Justice has argued that, because Plaintiffs "do[ ] not have fact witnesses" other than non-party witnesses and adverse party witnesses, they should be permitted to present their witnesses live because those witnesses are not under their control.  9/21/11 Hr'g Tr. 8.  *See also* 10/24/11 Hr'g Tr. 109 ("[T]he Department of Justice in these cases has no witnesses, Your Honor.").  Thus, Plaintiffs seek to present their witnesses live, while Defendants are restricted to pre-filed testimony for their witnesses.

Compounding the unfairness, Plaintiffs propose that Defendants should provide pre-filed testimony for any witnesses *called by Plaintiffs* as adverse party witnesses, so that Plaintiffs can

use the written directs as cross-examination material when they call the witnesses in their affirmative case. Because Plaintiffs take the position that they cannot "reasonably . . . obtain written testimony" from those witnesses, Defendants will have no advance indication of the scope of the initial testimony that Plaintiffs intend to elicit from them. (The deposition of any given witness will undoubtedly cover a much broader array of topics than Plaintiffs will present at trial.) But Plaintiffs nonetheless seek to require Defendants to provide written testimony in advance of trial if the evidence that Defendants intend to elicit from those witnesses will exceed the scope of the direct (something that it is impossible for Defendants to know in advance).

The Court stressed two things at the initial status conference. First, "we're going with declarations wherever possible," 9/21/11 Hr'g Tr. 16, and, second, any proposal must be "fair and balanced," *id.* Plaintiffs' proposal satisfies neither of these requirements; Defendants' proposal satisfies both. For any non-party witnesses available for trial and for any party witnesses called as a non-adverse witness, the proponent of the testimony should provide a written direct examination pursuant to the schedule established by the Court on September 23, 2011, and tender the witness for examination at trial by the opposing parties. Thus, the use of declarations is employed "wherever possible." Plaintiffs' protest that they do not control non-party witnesses (which is also true of Defendants) is irrelevant: they will have deposed those witnesses and can prepare written direct testimony or (if the non-party witness is uncooperative) use deposition designations to the same effect.

For any party witness called as an "adverse" witness, the proponent of the testimony should not need to provide a written direct examination, but should examine the witness at trial as provided by Federal Rule of Evidence 611(c). Such witness should then be tendered for examination by the opposing parties, without "scope" limitation and without submission of pre-

filed written direct examination, so that the witness need appear at trial on only one occasion and can provide live testimony for both sides.  Under Defendants' proposal, both sides will be able to present live testimony from those witnesses without artificial and unfair limitations.

The Manual for Complex Litigation has endorsed the position that, "[w]hen plaintiffs call significant defense witnesses," it is appropriate to "permit[ ] defendants to offer their case on redirect examination" of those witnesses.  MCL § 12.23, at 138.  They should not have to be called to the stand twice, particularly not in a bench trial.  If Plaintiffs present the witness live, Defendants should be able to elicit testimony live from the same witness, without having to guess at the scope of the direct examination two weeks in advance of trial or to show their hand to Plaintiffs through pre-filed direct testimony before Plaintiffs even call that witness to the stand.

Alternatively, the Court may prefer written testimony even for adverse party witnesses. In *Philip Morris*, for example, the court required that "[t]he direct testimony of all witnesses — both fact witnesses and expert witnesses — shall be presented in writing," and further required that "[a] party offering an adverse witness . . . provide a written direct examination where possible by use of prior trial or deposition testimony."  Order #471, at 5, 7, *United States v. Philip Morris USA Inc.*, Civil Action No. 99-2496 (GK) (D.D.C. Jan. 16, 2004).  If the Court prefers that approach, Plaintiffs should provide written direct testimony for adverse party witnesses (derived from their deposition) and Defendants, to the extent they want to exceed the scope of that examination, can provide written direct testimony of their own (once they have Plaintiffs' written direct in hand).

Either approach would be fair and balanced.  What would be neither fair nor balanced would be to allow Plaintiffs to present all or most of their witnesses live, while Defendants are

reduced to pre-filed testimony not only for their own witnesses, but also for witnesses who Plaintiffs call as well.

Finally, it is worth stressing that the two issues on which Plaintiffs and Defendants disagree are not unrelated.  If the Court adopts Plaintiffs' proposal on witness examination, Plaintiffs will dominate trial time because they will be examining all or most fact witnesses live, whereas Defendants will be relying for the most part on written testimony.  That is, of course, exactly why Plaintiffs favor a witness limit rather than a more equitable chess clock approach.

## CONCLUSION

Defendants respectfully request that the Court enter the Proposed Order Governing Trial Witnesses submitted by Defendants and specify the amount of total trial hours available to each side for direct examination, cross-examination, and rebuttal.

Dated: November 4, 2011                    Respectfully submitted,


                                           *s/ Mark C. Hansen*
                                           Mark C. Hansen, D.C. Bar # 425930
                                           Michael K. Kellogg, D.C. Bar # 372049
                                           Kellogg, Huber, Hansen, Todd,
                                               Evans & Figel, P.L.L.C.
                                           1615 M Street, NW, Suite 400
                                           Washington, DC 20036
                                           (202) 326-7900


                                           Richard L. Rosen, D.C. Bar # 307231
                                           Donna E. Patterson, D.C. Bar # 358701
                                           Arnold & Porter LLP
                                           555 Twelfth Street, NW
                                           Washington, DC 20004-1206
                                           (202) 942-5000


                                           Wm. Randolph Smith, D.C. Bar # 356402
                                           Kathryn D. Kirmayer, D.C. Bar # 424699
                                           Crowell & Moring, LLP
                                           1001 Pennsylvania Avenue, NW
                                           Washington, DC 20004
                                           (202) 624-2500

                                           *Counsel for AT&T Inc.*


                                           George S. Cary, D.C. Bar # 285411
                                           Mark W. Nelson, D.C. Bar # 442461
                                           Cleary Gottlieb Steen & Hamilton LLP
                                           2000 Pennsylvania Avenue, NW
                                           Washington, DC 20006
                                           (202) 974-1500


                                           Richard G. Parker, D.C. Bar # 327544
                                           O'Melveny & Myers LLP
                                           1625 Eye Street, NW
                                           Washington, DC 20006
                                           (202) 383-5300

                                           *Counsel for T-Mobile USA, Inc. and
                                               Deutsche Telekom AG*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2011, I caused the foregoing Memorandum in

Support of Defendants' Proposed Order Governing Trial Witnesses to be filed using the Court's

CM/ECF system, which will send e-mail notification of such filings to counsel of record.  This

document is available for viewing and downloading on the CM/ECF system.


*/s/ Mark C. Hansen*
Mark C. Hansen