IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, *et al.*,  ) <br> ) <br> **Plaintiffs,**  ) <br> ) <br> v.  ) <br> ) <br> AT&T INC., *et al.*,  ) <br> ) <br> **Defendants.**  ) <br> ) | Case No. 1:11-cv-01560 (ESH) <br><br> Referred to Special Master Levie |

## SPECIAL MASTER ORDER NO. 3

Before the Special Master are the (November 4) Memorandum in Support of Defendants' Proposed Order Governing Trial Witnesses (Doc. 71), Plaintiffs' Statement Respecting Trial Witnesses (Doc. 72), Plaintiffs' Supplemental Statement Respecting Trial Witnesses (Doc. 77), and the (November 9) Memorandum in Support of Defendants' Proposed Order Governing Trial Witnesses (Doc. 78).[1] The Special Master has considered the written submissions as well as oral argument presented on November 8, 2011.

### I.     Procedural History and Background

On September 23, 2011, the Court entered a Stipulated Scheduling and Case-Management Order ("CMO") that established the procedures for discovery in the above-captioned case, which set January 10, 2012 for conclusion for fact discovery. (Doc. 33). The CMO provided that the parties were to negotiate at a later date "the timing, manner, and content

---

[1] The Special Master also considered the substance of Defendants' Motion for Leave to File a Supplemental Memorandum but the matter raised by Defendants does not affect the issues considered here.

of the exchange of witness lists." (*Id.* at ¶10).[2] The exchange of witness lists was to happen "at the earliest possible time to ensure adequate opportunity for each side to depose any witness on the opposing side's witness list if that witness has not already been deposed in this case." (*Id.*).[3]

The CMO provides for no more than 30 fact depositions per side "(excluding experts), plus depositions of the parties' designated witnesses as set forth in Paragraph 10 of [the] Order." (CMO at ¶7). Each Rule 30(b)(6) deposition counts as one deposition regardless of the number of persons testifying in response to the Rule 30(b)(6) notice or subpoena. (*Id.*). Paragraph 10 of the CMO dealing with witness identification provides that, "[d]espite the limitation on the number of depositions that each side may take, each side shall have the right to depose any witness on the opposing side's witness list if the witness has not already been deposed in this case, even if the limitation on depositions is exceeded."

The parties were unable to reach an agreement regarding the procedure for witness lists and filed separate proposals on November 4, 2011. After review of the parties' November 4 submissions and a consultation with Judge Huvelle, the Special Master communicated to the parties comments and thoughts of Judge Huvelle. In an email dated November 7, the Special Master informed the parties, in substance, that

> 1. Notwithstanding earlier comments by the Court, Judge Huvelle was not inclined to receive direct testimony by declarations except in the case of expert witnesses;

---

[2] Although the CMO required the negotiation to occur "on or before October 14," the issue was first raised with the Special Master on November 4, 2011.

[3] The CMO proposed by the parties did not delineate who or what was encompassed in the use of the term "witness list." The Special Master assumes that the term used by the parties in ¶¶ 7 & 10 of the CMO, at least with respect to fact witnesses, was used consistently with Fed. R. Civ. P. 26(a)(1)(A)(i)—"name and, if known, the address and telephone number of each individual likely to have discoverable information – that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." *See also*, LCvR 16.3(a)(2). Thus, it is assumed that all witnesses testifying at trial, with the exception of those presented for impeachment only or as expert witnesses, will be individuals disclosed pursuant to ¶10 of the CMO. The date for naming trial witnesses will be set at a later time.

2

2. With respect to expert witnesses, Judge Huvelle directed the Special Master to consult with the parties about limitations on the pages of expert declarations and the exhibits to be attached to such declarations;
3. Judge Huvelle was considering the use of a trial clock and/or limitations on the number of witnesses; and
4. Judge Huvelle anticipated trial taking place 4 days per week for approximately 5 ½ hours per day for a period of 4–6 weeks.

In anticipation of the Special Master's weekly status conference on November 8 with the parties, the Special Master sent the parties an email indicating a desire to discuss at the status the following: witness disclosures, document production, presentation of trial evidence, third party evidence, and the handling of evidentiary objections at trial. The Special Master heard oral argument from the parties on November 8.

The Special Master informed the parties that he was going to recommend to Judge Huvelle that she use a trial clock and not a numerical limit on the number of witnesses any party could call at trial. At the request of the Special Master, the parties filed supplemental memoranda in support of their respective proposals on November 9, 2011.

**II. Overview**

As noted above, the parties presented the Court with a Stipulated Scheduling and Case Management Order. With very limited exceptions (*e.g.* CMO ¶¶ 11, 16), the Court accepted the dates proposed by the parties. Now that the parties are more immersed in pretrial proceedings, issues such as those raised here and those forthcoming should necessarily focus the parties on the reality of preparing this case for trial. As the Special Master examines the positions taken by the parties here, examination of the overall timeline for preparing this case for trial is appropriately examined as well.

With respect to fact discovery, the date for completion proposed by the parties was January 10, 2012. In connection with the issues dealt with in this Order, the parties jointly have

proposed January 12 as the date for a final identification of witnesses with a reservation that depositions may need to continue beyond January 12.

With respect to an issue not discussed in detail with the Special Master—expert witnesses—the Special Master notes that the parties' CMO, as modified by Judge Huvelle, calls for simultaneous identification of experts on November 22 and simultaneous identification of rebuttal experts on December 7, 2011. Plaintiffs' expert reports and Defendants' expert reports on merger efficiencies are due on December 28, with responsive reports due January 9 and rebuttal reports due January 16, 2012. Expert depositions must be completed by January 25.

Thus, the CMO envisions no depositions of any sort occurring after January 25—the date for completion of the expert depositions. Incorporating Judge Huvelle's expressed intention to use written direct testimony only for expert witnesses, a reasonable view of the future schedule would set January 29 as the date for submission of the direct testimony of Plaintiffs' experts and would use that date as a due date for other matters the Court will need to consider in preparing for trial. For example, January 29 is a logical date also for submission to the Court of final exhibit lists and a list of fact witnesses with a brief summary of anticipated testimony. February 8 would then be the date for submission of the written direct testimony of Defendants' experts.

In connection with "teaching experts" discussed below, the parties will need to submit briefs on legal and factual issues to the Court—perhaps in the mid-January time period. One of the reasons for the Special Master setting the dates in this Order is the realization that depositions and discovery must end in a timely fashion so that the parties and the Court properly can prepare for trial. It would be highly surprising for the Court to entertain the concept of discovery continuing as the trial date approaches. There is a need for closure, and this Order is an attempt to set dates that will prepare this case for trial in a manner that is fair to the parties but also

responsive to Judge Huvelle's need to prepare for and conduct the trial in an orderly and efficient manner.

### III. Potential Fact Witnesses

<u>Background</u>

The most contentious issue presented for resolution involves the timing and methodology for disclosure of potential fact witnesses. This issue may also be the most important issue currently between the parties because it impacts both trial preparation and the presentation of evidence at trial. The CMO as presently drafted permits a maximum of 30 fact depositions, including Rule 30(b)(6) depositions, but does not count as part of the 30 those depositions of persons listed on the CMO ¶10 witness lists not already deposed in this case.

The math on the number of possible depositions and the looming February 13 trial date raise very serious concerns. An additional reason for concern is Plaintiff's statement that there may be a need to resolve "a dispute regarding a massive privilege claim." (Supp. Stmt. at 4). [4]

Plaintiffs point out that, although party depositions have begun, non-party depositions have yet to begin; that "there are substantial disputes about the parties' productions"; that Defendants have not noticed any of the 30 depositions permitted under the CMO; and that Defendants indicated that they plan to take multiple Rule 30(b)(6) depositions. (*Id.* at 2–3). Based upon these concerns, Plaintiffs assert that unregulated pre-trial conduct creates "uncertainty inherent in trying to compress so much discovery into such a short schedule." (*Id.* at 4).

Defendants' view of witness identification rests upon three principles: (1) time to depose witnesses is of the essence with a fact discovery cut-off of January 10; (2) Plaintiffs have the

---

[4] The parties will be well advised to "tee up" this dispute very soon if they are unable to resolve it to allow disposition without adversely affecting the timing and completion of discovery.

burden of proof and should name their witnesses first; and (3) there should be no limit on the number of fact witnesses called at trial. (Nov. 9 Memo. at 1).

At oral argument, Defendants pointed to the time spent by DOJ investigating the underlying proposed purchase by AT&T of T-Mobile USA, including receipt of many documents, before the decision was made to initiate the current lawsuit. Plaintiffs pointed to the work done by AT&T prior to deciding to purchase T-Mobile, including submissions by AT&T to both DOJ and the FCC to justify and support the proposed purchase.

From these different perspectives, each party claims that the other side should be prepared to move forward expeditiously toward trial. At the same time, each party asserts that it needs to know more about the other party's plans for trial—theories, witnesses and documents—before it can commit to a witness list. These divergent perspectives, not surprisingly, have led to divergent suggestions on how best to proceed with fact discovery.

Discussion

In their November 9 Memorandum, Defendants set out a proposition that reflects discussions on November 8 between the Special Master and the parties and is the fundamental tenet upon which all parties **must** proceed: "each side would have a good-faith obligation to list those witnesses, and only those witnesses, that it believes it may want to call at trial." (Nov. 9 Memo. at 3). This tenet is the prism through which the Special Master examines the proposals of the parties.[5]

---

[5] To be sure, the Court and/or the Special Master have the right to expect all parties to adhere to this tenet in theory and practice. Indeed, should the Court and/or the Special Master conclude that any party has failed to exercise full and reasonable efforts to fulfill this good-faith obligation, let alone find that any party has deliberately attempted to circumvent this obligation, the Court, upon motion, its own initiative or a recommendation of the Special Master, retains the power to ensure compliance with or otherwise enforce this obligation

Putting Defendants' proposition in different terms, the Special Master orders that a party may not call a witness at trial unless that person was identified in accordance with ¶10 of the CMO and the procedures set out herein. Such a limitation will force each side to examine carefully who goes on the witness identification list and who is likely to be called as witness at trial. It should also avoid a last minute effort to put individuals on the list of trial witnesses who were not previously named in a timely fashion so that the opposing side could decide during pre-trial discovery whether or not to depose that person.

Recognizing that the exigencies of pretrial preparation may require some flexibility, there should be a procedure to add a name or two to the list of witnesses for discovery purposes if the party seeking permission to name the witness demonstrates good cause for not identifying the person earlier. The determination of whether "good cause" is shown will involve examination of the reasons why a person was not originally listed as a witness, whether the request for additional identification of witnesses is necessitated by evidence developed in discovery that was not reasonably foreseeable at the time witness identifications were made pursuant to this order, and the degree of prejudice arising from permitting or not permitting the person to be named. A party must seek leave to name any additional witnesses at the earliest possible juncture.

While Plaintiffs take issue with some of the proposals put forward by Defendants, the dispute on naming of potential witnesses really is one of timing and degree. For example, both parties agree that Plaintiffs should name potential fact witnesses first. Whereas Plaintiffs suggest a staggered approach with alternating and successive disclosures, Defendants seek an order that Plaintiffs disclose all of its witnesses at once, to be followed several weeks later with a list of defense witnesses. [*Compare* Pls.' Nov. 9 Proposed Order at ¶1 (Doc. 77-1) *with* Dfs.' Nov. 9 Proposed Order at 1 (Doc. 78-1)]. Under each side's proposals, the parties would simultaneously

be able to add up to five additional witnesses on January 12, 2012. (Pls.' Nov. 9 Proposed Order at 1; Dfs.' Nov. 9 Proposed Order at 1). Defendants' proposal would also permit each party to remove trial witnesses from their lists on January 12. (Dfs.' Nov. 9 Proposed Order at 1).

Although Defendants seek an order that Plaintiffs disclose all of their witnesses at one time, the Special Master is not persuaded that Defendants' request in this regard is appropriate. As Plaintiffs assert, they may tailor their witness list, in part, based upon names contained on Defendants' initial list or on information gleaned during the on-going discovery process. (Supp. Stmt. at 2). If witnesses are identified in a progressive manner, the likelihood is greater that the persons identified will more accurately reflect the persons needed to support or rebut the parties' respective cases.

Defendants' proposed order provides for each witness disclosure to include a brief description of the subjects about which each potential witness is expected to testify. (Dfs.' Nov. 9 Proposed Order at ¶1). Providing subject matter information makes sense and should enable the opposing party to decide more easily whether to depose the named person and whether the opposing party wants to name a witness to counter the person named.

In the case of non-parties where a party does not know the identity of a specific individual, the naming party must provide a detailed subject matter description sufficient to permit the non-naming party to determine whether to depose the representative of the non-party, provided that the naming party provides the non-naming party the name of the specific individual as soon as possible. (Pls.'s Proposed Order at ¶1).

Inherent in Plaintiffs' staggered approach is a specific numerical limit on witnesses to be identified. Defendants take exception with this approach on the grounds that it is too early in the case to place such limits because Defendants do not know which or how many witnesses will be

needed to rebut Plaintiffs' case. (Nov. 9 Memo. at 1). Instead, Defendants suggest a time limit for each side to present its case. (*Id.*).

Defendants' concern about limiting identification of witnesses merits serious consideration, but their proposed solution of a time limit is not appropriate at this time. Although the Special Master anticipates proposing a time limit on the presentation of each side's case (all direct, cross, redirect, rebuttal, and any sur-rebuttal), the precise limit should await further discussion and consideration closer to the completion of discovery and the pre-trial conference with Judge Huvelle.

At this juncture, a presumptive numerical limit on the identification of potential witnesses seems the preferable course, with a "good cause" safety valve available for the parties to seek relief. To be clear, the Special Master is focusing here on identification of potential witnesses for discovery and not proposing an identical numerical limit or even a specific numerical limit on the number of witnesses to be called at trial.

Inasmuch as Plaintiffs have the burden of proof, and since Plaintiffs presumably have at least a solid, professional idea of how they will present their case based upon their investigation, it is appropriate to require Plaintiffs to proceed with the first identification of witnesses. Because this issue of witness identification has been percolating at least since the entry of the CMO on September 23, there is every reason to expect that Plaintiffs can proceed on an expedited basis— indeed, Plaintiffs originally proposed November 15. [Pls.'s Nov. 4 Proposed Order at ¶1 (Doc 72-1)].

The Special Master finds that Plaintiffs' presumptive witness identification limits of 15, 15 and 5 are reasonable but do not create sufficient assurance that discovery can move along as expeditiously as it must to meet the trial date in an orderly fashion. Thus, Plaintiffs shall name 18

potential fact witnesses by November 16. Defendants shall name 18 potential fact witnesses by November 23, 2011. The Special Master also finds the Plaintiffs' proposal regarding identification of witnesses alternatively at this time is reasonable given the state of discovery. (Pls.' Nov. 9 Proposed Order at ¶1).

Plaintiffs shall name another 12 potential fact witnesses by December 5 and Defendants another 12 by December 12. Lastly, each side may name a maximum of five witnesses by January 6. The parties may also remove witnesses from their lists on January 6. The above presumptive numerical limits will, in conjunction with CMO Paragraph 10, entitle each side to identify 35 fact witnesses, resulting in a maximum total identification of 70 fact witnesses.

## IV. Adverse Witnesses

The Special Master believes that there is a need for a provision to ensure a focused and strict approach to witness identification. Specifically, a party may name as a witness to be used in its case-in-chief a person reasonably identified as "adverse" to the party naming the witness. If the other party with whom the "adverse" witness is identified wants to call the witness in its own case, that party must identify the person as one of its Paragraph 10 witnesses or otherwise be barred from calling the "adverse" witness in its case-in-chief.

To take an extreme example, if Plaintiffs plan to call the CEO of AT&T as an "adverse" witness in their case-in-chief and lists the CEO, then AT&T, in order to ask questions of its CEO in support of AT&T's case-in-chief without being limited by the scope of direct testimony, must include its own CEO as one of its identified witnesses. Which party, if any, deposes the CEO is a separate question.

Defendants seek a provision that "adverse" witnesses be examined as permitted by Fed. R. Evid. 611(c) and then be permitted to testify as an affirmative witness without being bound by

limitation on "scope."[6] One purpose of Defendants' proposal is to enable witnesses to have to testify only once at trial rather than being called in each side's case in chief.

The Special Master agrees that it will be most efficient for both the witnesses and the Court to call witnesses, including "adverse" witnesses, to testify only once. Additional procedures regarding "adverse" witnesses shall be decided upon at the pretrial conference.

### V.  Calling Witnesses from the Opposing Side's List

Defendants propose that either side be permitted to call a witness designated "on the other side's witness list if the side designating that witness elects not to call the witness at trial." (Dfs.' Nov. 9 Proposed Order at ¶3). Plaintiffs object that such a rule will enable Defendants to avoid providing timely notice of who their principal witnesses will be. (Supp. Stmt. at 3–4).

The Special Master finds no compelling reason to bar any party from calling in its case an individual named on the opposing party's trial list of witnesses if the opposing party decides not to call that person at trial and if the "calling" party had listed the person on its Paragraph 10 witness list. The Special Master believes that a party relying on the ability to call witnesses from the other side's trial witness list should not be prejudiced if the other side removes that witness from its trial list.

### VI. Time Limits/Witness Limits

Judge Huvelle's decision not to use written direct testimony for fact witnesses raised the question of placing time limits or witness limits on the presentation of evidence. The Special Master believes that time limits on the presentation of each side's case is preferable, with the

---

[6] As stated above, a party's entitlement to question a witness the opposing side has called as an "adverse" witness without being limited by the scope of the "adverse" direct is conditioned upon whether the party has identified that witness on its own witness lists.

decision on the time limit deferred until after discovery and further consultation with the parties. Use of a witness limit, while easy to set, may raise questions of fairness.

## VII. Teaching Experts

During the October 24 status conference, Judge Huvelle raised the issue of using "teaching experts" to discuss the industry and the technology applicable to this case. (10/24 Tr. at 113:8–114:3). The parties should consult in an effort to agree upon one or two "teaching experts" who can provide the Court with information concerning the applicable industry and technology prior to trial. The "teaching experts" may not be people to be called by any party to testify as an expert in the trial of this case. Rather, they should be individuals available to the Court in open court on a date in January 2012 to provide the Court with necessary and appropriate background evidence. The presentation (whether seriatim or in a joint conversation) will not count against the trial time limits of any party.

## VIII. Deposition Designations/Use of Declarations

In order to reduce trial time, the parties are to consult during discovery in an effort to identify witnesses (*e.g.*, customers or competitors) whose evidence could be reduced to a declaration that presents in written form salient evidence, with each party reserving the right to argue about the weight, if any, to be given by the Court to such testimony. With limited use of such evidence, the parties may request the Court to accept such evidence without it counting against any side's time limitations.

By way of example, the deposition of a third party might be reduced to a several-paragraph declaration that sets out the important evidence each side believes is obtained in the deposition. This process is not recommended as a wholesale mechanism to avoid oral testimony but as a means to present several short, focused declarations in lieu of live testimony.

### IX. Document Production

Although not specifically addressed by the parties in connection with the pending issues, there is a related issue that may have a major impact on the ability of the parties to proceed to trial under the existing schedule. This problem involves document production from non-parties and from the opposing side.

There is no reason to believe that the parties are not working very conscientiously with non-parties to resolve issues of document production from non-parties. Nevertheless, insofar as production of documents from non-parties (and the opposing party/parties) may affect the ability of parties to take discovery depositions in a way that avoids requests to re-depose people after production of documents, there is the potential problem for completion of discovery in a timely fashion and to conduct depositions in accordance with the CMO ¶7. Indeed, the proposed orders submitted by the parties in connection with this matter recognize these potential problems.

The Special Master is not proposing any specific curative action at this time because the parties seem to be working very diligently to deal with these issues, but it is important to try and reduce as much as possible future problems.

### X. Conclusion

For the foregoing reasons, it is hereby ORDERED:

1. That the following schedule shall govern the identification of fact witnesses in this matter:

    | | |
    |---|---|
    | November 16, 2011 | Plaintiffs shall name up to 18 potential fact witnesses. Plaintiffs' witness identifications shall in all cases include a brief description of the subjects about which each potential witness is expected to testify. [*See* Fed. R. Civ. P. 26(a)(1)(A)(i)]. In the case of non-parties where Plaintiffs do not know the identity of a specific individual, Plaintiffs may substitute a detailed subject matter description sufficient to permit Defendants to determine whether to |

| | |
|---|---|
| | depose the representative of the non-party. Plaintiffs must provide Defendants the name of the specific individual as soon as possible. |
| November 23, 2011 | Defendants shall name up to 18 potential fact witnesses. Defendants' witness identifications shall in all cases include a brief description of the subjects about which each potential witness is expected to testify. [*See* Fed. R. Civ. P. 26(a)(1)(A)(i)]. In the case of non-parties where Defendants do not know the identity of a specific individual, Defendants may substitute a detailed subject matter description sufficient to permit Plaintiffs to determine whether to depose the representative of the non-party. Defendants must provide Plaintiffs the name of the specific individual as soon as possible. |
| December 5, 2011 | Plaintiffs shall name up to 12 additional potential fact witnesses. Plaintiffs' witness identifications shall in all cases include a brief description of the subjects about which each potential witness is expected to testify. [*See* Fed. R. Civ. P. 26(a)(1)(A)(i)]. In the case of non-parties where Plaintiffs do not know the identity of a specific individual, Plaintiffs may substitute a detailed subject matter description sufficient to permit Defendants to determine whether to depose the representative of the non-party. Plaintiffs must provide Defendants the name of the specific individual as soon as possible. |
| December 12, 2011 | Defendants shall name up to 12 additional potential fact witnesses. Defendants' witness identifications shall in all cases include a brief description of the subjects about which each potential witness is expected to testify. [*See* Fed. R. Civ. P. 26(a)(1)(A)(i)]. In the case of non-parties where Defendants do not know the identity of a specific individual, Defendants may substitute a detailed subject matter description sufficient to permit Plaintiffs to determine whether to depose the representative of the non-party. Defendants must provide Plaintiffs the name of the specific individual as soon as possible. |
| January 6, 2011 | Plaintiffs and Defendants may each name up to 5 additional potential fact witnesses. Defendants' witness identifications shall in all cases include a brief description of the subjects about which each potential witness is expected to testify. [*See* Fed. R. Civ. P. 26(a)(1)(A)(i)]. In the case of non-parties where the designating do not know the identity of a |

                    specific individual, Defendants may substitute a detailed subject matter description sufficient to permit Plaintiffs to determine whether to depose the representative of the non-party. Defendants must provide Plaintiffs the name of the specific individual as soon as possible. Plaintiffs and Defendants may remove fact witnesses previously designated from their list of potential fact witnesses.

        January 10, 2011        Plaintiffs and Defendants shall seek leave of the Court to add to their witness list, if desired, any witnesses previously identified on the opposing party's witness disclosures that the opposing party has since removed.

2. For any party witness called as an "adverse" witness, the proponent of the testimony shall examine the witness at trial as provided by Federal Rule of Evidence 611(c). Such witness shall then be tendered for examination by the opposing parties, without "scope" limitation provided the witness appears on the opposing parties' witness disclosure, so that the witness need appear at trial on only one occasion.

3. Each side reserves the right to call a witness on the other side's trial witness list if the side designating that witness elects not to call the witness at trial and the calling party had named the person on its Paragraph 10 witness list.

4. The Special Master defers consideration of the use of a time clock, witness limits, or other trial management tools until a later date.

5. The parties shall consult in an effort to agree upon one or two "teaching experts" who can provide the Court with information concerning the applicable industry and technology prior to trial.

6. The parties shall consult in an effort to identify witnesses whose evidence could be reduced to a declaration that presents in written form salient evidence, with each party reserving the right to argue about the weight, if any, to be given by the Court to such testimony.

7. Given the compressed schedule, it must be recognized that there will be requests to modify the schedule and make additions. Nevertheless, the party seeking a modification or variation from the requirements set out in Special Master Order 3 will have the burden of demonstrating good cause and why the issue underlying the request for modification was not avoidable with the exercise of reasonable diligence and judgment.

Date:  November 13, 2011

>/s/ Richard A. Levie_____
> Hon. Richard A. Levie (Ret.)
> Special Master